John K. Crossman (JKC 7387)
Frank C. Welzer (FCW 7159)
ZUKERMAN GORE & BRANDEIS, LLP
875 Third Avenue
Twenty-Eighth Floor
New York, New York 10022
212.223.6700

*Attorneys for Plaintiff Sony Electronics Inc.*

08   1721

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

✱  APR 2 8 2008  ✱

BROOKLYN OFFICE

LEVY. M.J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

SONY ELECTRONICS INC.,

                      Plaintiff,

      - against -

BEN Z. COHEN, ALBERT HOULLOU,
MARVIN SCHWARTZ, BROADWAY
PHOTO LLC, A & M PHOTO WORLD, LLC,
CAMERA ADDICT, LLC,
DIGITAL LIQUIDATORS LLC,
MILLENNIUM CAMERA LLC, PREFERRED
PHOTO, LLC, PRESTIGE CAMERA, LLC,
QWEST CAMERA LLC, REGAL CAMERA
LLC, WILD DIGITAL LLC, and JOHN
DOES 1 through 10,

                  Defendants.

------------------------------------------------------------- x

Civil Action No.

**COMPLAINT
<u>and Jury Demand</u>**

Plaintiff Sony Electronics Inc. ("SONY"), by its attorneys, Zukerman Gore &

Brandeis, LLP, for its complaint for false advertising, false designation of origin,

trademark infringement and unfair competition under the Lanham Act, 25 U.S.C. § 1125

*et seq.,* for violation of New York General Business Law §§ 349 and 350, for unfair

competition and trademark infringement under New York common law, for violation of

the Illinois Consumer Fraud and Deceptive Business Practices Act, Illinois S.H.A. 815

ILCS 505/1 *et seq.*, and for violation of the Connecticut Unfair Trade Practice Act, Connecticut General Statutes § 42-110b *et seq.*, against Defendants Ben Z. Cohen, Albert Houllou, Marvin Schwartz, Broadway Photo LLC, A & M Photo World, LLC, Camera Addict, LLC, Digital Liquidators LLC, Millennium Camera LLC, Preferred Photo, LLC, Prestige Camera, LLC, Qwest Camera LLC, Regal Camera LLC, and Wild Digital LLC, and John Does 1 through 10, alleges:

1.     SONY is the manufacturer and distributor of a comprehensive range of electronics products and accessories, including the PMW-EX1 XDCAM EX camcorder (the "EX1 camcorder"). The EX1 camcorder is a state-of-the-art, handheld camera for professional use by videographers and cinematographers. SONY is also the exclusive licensee in the United States of various of the "Sony" family of trademarks (as more fully alleged herein, the "Sony Marks").

2.     Defendants are an association-in-fact of individuals and business entities engaged in the sale or offering for sale of electronics over the internet, acting in concert, to engage in false advertising concerning the EX1 camcorder, which defendants purport to offer to customers at steeply-discounted prices. Defendants in fact do not have genuine EX1 camcorders for sale, but instead, contrary to their advertisements, defendants have either *no* product for sale or product that is materially different from the EX1 camcorder. In some instances, defendants have attempted to substitute a dismantled EX1 camcorder or a product configuration not sold by SONY and materially different from EX1 camcorders sold by SONY. Defendants use the SONY Marks to falsely designate that purported EX1 camcorders originate from SONY, or that SONY has authorized or approved their sale. In some instances, defendants misleadingly pretend to

- 2 -

offer the EX1 camcorder for sale and immediate shipment while in fact lacking any inventory of EX1 camcorders or any source of supply for the product. Defendants lure in consumers – and in some instances obtain from them credit card-based orders to purchase the EX1 camcorder – based on their uniquely low advertised prices for the product. Defendants thereafter attempt to sell to such customers other merchandise, including for example, accessories such as warranties, batteries and lenses which, they claim, are necessary for use of the non-genuine EX1 camcorders they purport to sell. In so doing, defendants profit at SONY's expense.

     3.     Defendants' activities concerning the EX1 camcorder have harmed SONY's lawful commercial practices. For the EX1 camcorder, SONY maintains a unilateral pricing policy (the "XL Program") that complies with the *Colgate* doctrine, set forth in *United States v. Colgate & Co.*, 250 U.S. 300 (1919). SONY offers the XL Program to a designated group of United States dealers. Under the XL Program, any dealer that chooses to sell an EX1 camcorder at a price below SONY's indicated price will be automatically terminated as an authorized dealer, and will be prohibited from purchasing EX1 camcorders from SONY. The XL Program was designed to encourage dealers to introduce the new technology of the EX1 camcorder to the marketplace and, until Defendants' acts and practices alleged herein, has been effective in doing so.

     4.     The XL Program encourages dealers to invest the necessary time and energy into training sales people concerning the EX1's revolutionary (and therefore frequently unfamiliar) video capture technology; helps dealers realize gains from their purchase of "demonstration units" (units dealers purchase from SONY for the sole purpose of using to demonstrate technology to customers); provides the hands-on

- 3 -

necessary pre- and post-sale support to customers about the benefits and use of the EX1 camcorder; and extends the reach of their advertising to venues and methods beyond the internet, such as open houses, participation in trade shows, trade journals and direct mail.

5.    By falsely representing that they are offering genuine EX1 camcorders for sale for steeply-discounted prices, defendants threaten to discourage reputable dealers from participating in the XL Program or from buying product from SONY. The XL Program represents SONY's effort to encourage its authorized dealers to make major investments in this new technology, including staff training, demonstration unit acquisition, and inventory investment, all of which are substantial undertakings for these dealers. Defendants' actions threaten to destroy the goodwill of such dealers now that they have in fact made those investments. Furthermore, defendants' actions threaten to impair SONY's ability to promote similar programs for other products in the future.

6.    Defendants have engaged in, and will continue to engage in, these activities willfully and deliberately, and in bad faith, using the SONY Marks, making false and misleading statements about the EX1 camcorder in their advertising, and misappropriating SONY's valuable goodwill and reputation.

7.    Defendants' actions are likely to injure, and have in fact injured, SONY by tarnishing its reputation and its goodwill, by confusing potential users and customers, and diverting sales, by threatening the viability of its dealer network, and by jeopardizing SONY's multi-million dollar investment in the EX1 camcorder technology.

## Parties

8.    Plaintiff Sony Electronics Inc. is a corporation organized under the laws of the State of Delaware, and has its principal place of business in San Diego, California. It sells electronic products, including HD camcorders, throughout the United States.

9.    Defendant Broadway Photo LLC ("Broadway Photo") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York.  It sells electronic products, including HD camcorders, to customers throughout the United States through internet websites, including www.bwayphoto.com (and a domain that directs browsers immediately to it, www.broadwayphotovideo.com); www.amphoto.com; www.cameraaddict.com; www.digitalliquidators.com; www.millenniumcamera.com; www.preferredphoto.com; www.prestigecamera.com; www.quest4cameras.com (and a domain that directs browsers immediately to it, www.quest4camera.com); www.regalphoto.com; and www.wilddigital.com (collectively, the "Broadway Group websites").  Upon information and belief, Broadway Photo operates a warehouse at the building that houses 321, 325 and 337 East 89th Street, Brooklyn, New York 11236, which it uses to store, and facilitate the receipt of, wholesale products sold by or in connection with each of the Broadway Group websites.  On information and belief, products sold by those websites are shipped to customers from the same warehouse.  Broadway Photo maintains a mailing address at 321 East 89th Street, Brooklyn, New York 11236.

10.    On information and belief, Defendant Ben Z. Cohen is an individual residing in the State of New York and President of Broadway Photo and Defendants A & M Photo World, LLC, Camera Addict, LLC, Digital Liquidators LLC, Millennium

Camera LLC, Preferred Photo, LLC, Prestige Camera, LLC, Qwest Camera LLC, Regal Camera LLC and Wild Digital LLC.

11. On information and belief, Defendant Albert Houllou ("Houllou") is an individual residing at 205 Ryder Avenue, Brooklyn, New York 11230. On information and belief, Houllou is a joint owner and member of Broadway Photo (along with Defendant Marvin Schwartz), and its CEO. Two Broadway Group websites, www.quest4cameras.com and www.regalcamera.com, maintain mailing addresses at Houllou's home address.

12. On information and belief, Defendant Marvin Schwartz ("Schwartz") is an individual residing in the State of New York and a joint co-owner and member of Broadway Photo (along with Houllou). Schwartz is the original registrant of the domains www.bwayphoto.com and www.broadwayphotovideo.com.

13. Defendant A & M Photo World, LLC ("A & M") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. A & M sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the Broadway Group websites. A & M maintains a mailing address at 321 East 89th Street, Brooklyn, New York 11236. On information and belief, the name of A & M refers to the initials of the first names of Houllou and Schwartz.

14. Defendant Camera Addict, LLC ("Camera Addict") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Camera Addict sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the

- 6 -

Broadway Group websites. Camera Addict maintains a mailing address at 325 East 89th Street, Brooklyn, New York 11236.

15. Defendant Digital Liquidators LLC ("Digital") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Digital sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the Broadway Group websites. Digital maintains a mailing address at 321 East 89th Street, Brooklyn, New York 11236.

16. Defendant Millennium Camera LLC ("Millennium") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Millennium sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the Broadway Group websites. Millennium maintains a mailing address at 337 East 89th Street, Brooklyn, New York 11236.

17. Defendant Preferred Photo, LLC ("Preferred") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Preferred sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the Broadway Group websites. Preferred Photo maintains a mailing address at 337 East 89th Street, Brooklyn, New York 11236.

18. Defendant Prestige Camera, LLC ("Prestige") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Preferred sells electronic products, including HD

camcorders, to customers throughout the United States through one or more of the Broadway Group websites. Prestige Camera maintains a mailing address at 337 East 89th Street, Brooklyn, New York 11236.

19.     Defendant Qwest Camera LLC ("Qwest") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Qwest sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the Broadway Group websites. Qwest maintains a mailing address at 205 Ryder Avenue, Brooklyn, New York 11230, Houllou's home address.

20.     Defendant Regal Camera LLC ("Regal") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Regal sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the Broadway Group websites. Regal maintains a mailing address at 337 East 89th Street, Brooklyn, New York 11236.

21.     Defendant Wild Digital LLC ("Wild Digital") is a limited liability company organized under the laws of the State of New York, with its principal place of business in Brooklyn, New York. Wild Digital sells electronic products, including HD camcorders, to customers throughout the United States through one or more of the Broadway Group websites. Wild Digital maintains a mailing address at 337 East 89th Street, Brooklyn, New York 11236.

22.     On information and belief, each of Defendants JOHN DOES 1 through 10 (collectively the "JOHN DOE Defendants") sell electronic products, including HD

camcorders, to consumers throughout the United States through internet websites (including, for some JOHN DOES, www.lensesnmore.com, www.1wayphoto.com and www.soniccameras.com (collectively the "JOHN DOE websites")). On information and belief, each of Defendants JOHN DOES 1 through 10 does or transacts business in New York and is committing the acts alleged herein in New York. The JOHN DOE Defendants that operate the websites www.lensesnmore.com and www.1wayphoto.com maintain a mailing address at 5407-5409 18th Avenue, Brooklyn, New York. The JOHN DOE Defendants operating the website www.soniccameras.com maintain a mailing address at 3505 Quentin Road, Brooklyn, New York.

23.     Cohen, Houllou and Schwartz (collectively, the "Individual Defendants"), together with Broadway Photo, A & M, Camera Addict, Digital, Millennium, Preferred, Prestige, Qwest, Regal and Wild Digital (collectively, with the Individual Defendants, referred to as the "Broadway Group Defendants") act as one entity under the common control, direction and supervision of Broadway Photo and the Individual Defendants.

24.     At the direction, and with the approval, of the Individual Defendants, the Broadway Group Defendants routinely engage in nefarious and unfair business practices harming customers that have resulted in negative Better Business Bureau ratings and, on information and belief, complaints to the New York Attorney General's Office.

25.     The Broadway Group Defendants have been the subject of hundreds of complaints by customers of electronics products, including cameras and camcorders, that outline "bait and switch" advertising and other illegal and unfair sales techniques that they employ. The Broadway Group Defendants accept internet orders for premium electronic products designed for the U.S. market, but at steeply-discounted prices.

Shortly thereafter, the Broadway Group Defendants email the buyers who have placed those orders. The email typically requests that the buyers call them for "verification purposes". During such calls, the Broadway Group Defendants inform the buyers that the units they purchased either (1) lack essential components or (2) are foreign-market versions of the product they wanted. In the former situation, a buyer is told that his or her unit requires the additional purchase of expensive components that normally come with the product. When a buyer is told that he or she has purchased a foreign-market unit, a representative for the Broadway Group Defendants explains that the unit uses foreign language menus, comes with a foreign language manual, and lacks a U.S. warranty. Customers are sometimes offered the option of purchasing the domestic product that they originally intended to order at a price at or above prevailing market prices. Other times, a representative will encourage the buyer to purchase an expensive U.S. warranty and accessories that will allow the buyer to use the unit in the U.S., including power source adapters. According to the hundreds of customer complaints on the internet, during most so-called "verification" phone calls, representatives of the Broadway Group Defendants aggressively pursue sales of additional components and warranties for highly marked-up prices, frequently misrepresenting the quality of the batteries and other items included by the manufacturer with the product at no additional cost.

26.     The JOHN DOE websites collectively have been the subject of hundreds of customer complaints on the internet referring to misrepresentations about photo and video products and describing the JOHN DOE Defendant(s)' use of "bait and switch" advertising and sales practices similar to those employed by the Broadway Group Defendants.

27.     Over the past 3 years, the Better Business Bureau has received over 940 complaints concerning the Broadway Group Defendants. 416 of these complaints relate to their "Selling Practices". 105 of them relate to "Advertising Issues". Based on these complaints, the Better Business Bureau has given the Broadway Group Defendants an unsatisfactory rating. The Better Business Bureau has given the JOHN DOE website www.1wayphoto.com, an unsatisfactory record based on 84 complaints made in the past year, many of which relate to "bait and switch" advertising and sales tactics.

### Jurisdiction and Venue

28.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337, it being a case or controversy arising under a statute of the United States, to wit, the Lanham Act, 25 U.S.C. § 1125 *et seq.* This Court has pendent jurisdiction over the state law and common law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this district as Defendant Broadway Photo LLC and other defendants reside in this district and are doing and transacting business in this district. Additionally, a substantial portion of the acts complained of occurred in this district. On information and belief, this Court also has jurisdiction over the subject matter of this dispute by reason of 28 U.S.C. § 1332 (diversity of citizenship), but the full composition of the limited liability company defendants' members is not yet known to plaintiff. The amount in controversy exceeds $75,000 exclusive of interest and costs.

### ALLEGATIONS COMMON TO ALL COUNTS

### The EX1 Camcorder And The Sony Marks

29.     In April 2007, at the National Association of Broadcasters convention, SONY announced the new EX1 brand digital HD camcorder, a revolutionary device with

the capability to capture and record full high definition 1920 x 1080 resolution images on solid-state memory cards using 3 ½ inch CMOS imagers, all in the size and form-factor of a hand-held camcorder. The EX1 camcorder is a SONY XDCAM camcorder that incorporates SONY's XDCAM, Exmor and SxS proprietary technologies. SONY's "Exmor" technology facilitates the capture of images with high resolution and high sensitivity. Its "SxS" technology refers to the design of its SxS PRO memory card, used in the EX1 camcorder.

30.    The United States Patent and Trademark Office has granted federal trademark registration to the SONY mark for use with HD camcorders[1], and to the XDCAM mark. True copies of proof of registration of the SONY and XDCAM marks obtained from the USPTO website are attached hereto as Exhibit A. SONY's affiliate Sony Corporation, a Japanese entity ("SONY JAPAN"), filed applications with the USPTO for registration on the principal register of the marks EXMOR and SxS on, respectively, February 2, 2007 and April 16, 2007. SONY JAPAN is the owner of the SONY, XDCAM, EXMOR and SxS marks (collectively, the "Sony Marks"). SONY is the exclusive licensee from SONY JAPAN of the Sony Marks. SONY uses the Sony Marks as designations of source and quality for its products, including the EX1 camcorder. SONY uses the registration symbol "®" on its products, including the EX1 camcorder, and in advertising associated with the registered marks SONY and XDCAM.

31.    The EX1 camcorder was the result of four (4) years of work, and an investment of over one-hundred million dollars ($100,000,000.00) in research and development. The EX1 camcorder is the pioneer camera in a planned product-line of

---

[1]    Specifically, SONY is the exclusive licensee of the mark Registration No. 1258436 for SONY for use in International Class 9 and U.S. Classes 21 and 26.

multiple cameras, each of which will build upon and leverage the EX1's state-of-the-art technology and its growing reputation. The EX1 camcorder is different from all previous camcorders because, among other things, it uses cutting-edge ½-inch CMOS imager technology as well as a high-speed, solid-state memory recording mechanism, all in the size and form-factor of a hand-held camera. This uniqueness created both a challenge and an opportunity.

## The XL Program

32.     In planning this new product launch, SONY realized that in order for the product to be successful, the field sales people of SONY's dealers would need substantial training in the new technology. Only a properly trained salesperson could be expected to convey to buyers the inherent advantages of this product. But in many areas of electronics sales, retail margins have been greatly reduced, thereby creating a disincentive for dealers to invest in training their salesmen and purchasing demonstration units. A new technology, like the EX1 camcorder, was at risk for being ignored by dealers, or misunderstood, because it came with a both a learning curve and a substantial investment cost.

33.     To overcome resistance to training, and to foster dealer willingness to make the necessary investment in this important product, SONY decided to implement for the EX1 camcorder a unilateral minimum price specification in accordance with the *Colgate* Doctrine.[2] Sony named this program the XL Program. By establishing an unwavering policy of terminating any dealer that sold the EX1 camcorder at a lower price, SONY helped to ensure that those dealers that chose to invest in the product would

---

[2]     *See United States v. Colgate & Co.*, 250 U.S. 300 (1919).

be able to sell it at a price sufficient to be able to earn back their investment through sales of EX1 camcorders at an acceptable profit margin.

34.    The XL Program was designed to encourage dealers to introduce the new technology of the EX1 camcorder to the marketplace, and to invest the necessary time and energy into training sales people concerning the EX1's revolutionary (and therefore frequently unfamiliar) video capture technology, by providing dealers with the following activities and benefits:

a.    SONY provides dealers with a 40% discount for the purchase of 5 demonstration units;

b.    SONY commissions and/or creates, displays and distributes advertisements, mailers and "eblast newsletters" that direct end users to www.sony.com/xdcamex, which provides the names and contact information of dealers participating in the XL Program.

c.    SONY provides dealers with point of sale 10% rebates (10% off the dealer price per unit).

d.    SONY provides *end users* that purchase from dealers an additional 8GB SxS™ ExpressCard™ media card (one is already in the box containing the EX1 camcorder); and

e.    SONY takes steps to insure that no participants in the XL Program are violating the rules of the Program, including those relating to SONY's unilateral minimum price; such steps include the expulsion of violators from the Program.

35.     At first, the XL Program was met with great enthusiasm by SONY's dealer network. SONY invested considerable time, effort, and goodwill in educating its dealers about the program. However, not long after the EX1 camcorder began to be sold, SONY began to receive reports from dealers of EX1 camcorders being offered for sale at prices more than $1,000 dollars below the specified price.

## The Defendants Threaten The XL Program Using The Sony Marks And Engaging In False Advertising, False Designation of Origin, Unfair Competition and Deceptive Acts

36.     SONY discovered that the Broadway Group Defendants were offering the EX1 camcorder for sale at these lower prices. More recently, SONY discovered that the JOHN DOE Defendants operating the JOHN DOE websites are doing the same. On information and belief, no company has the EX1 camcorder actually for sale at prices lower than the minimum price unilaterally enforced by SONY.

37.     On their websites, all Defendants advertise, and offer for sale, the EX1 camcorder, referring to it as the "Sony – PMW-EX1, XDCAM EX SxS Pro-Flash Memory High Definition Camcorder."

38.     The Broadway Group Defendants also separately advertise and offer for sale the so-called "Sony – PMW-EX1, XDCAM EX SxS Pro-Flash Memory High Definition Camcorder (Pal)" (hereafter, the "Pal Version").

39.     The Pal Version in fact does not exist. Defendants have falsely claimed to offer a product that is not manufactured by SONY, and have done so using the Sony Marks.

40.     Defendants have offered, and to continue to offer, the EX1 camcorder for a price below the SONY unilateral minimum price as follows:

a. www.broadwayphoto.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,407. It states that the EX1 camcorder "usually ships within 1 to 2 business days".

b. www.amphotoworld.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,427.

c. www.cameraaddict.com offers the EX1 camcorder with all accessories, including a one year warranty, for $5,245. It states that the EX1 camcorder "ships on order".

d. www.digitalliquidators.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,431.

e. www.millenniumcamera.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,419. It states that the EX1 camcorder "usually ships within 1 to 2 business days".

f. www.preferredphoto.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,415.

g. www.prestigecamera.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,411.

h. www.quest4cameras.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,423.

i. www.regalcamera.com offers the EX1 camcorder, in stock, with all accessories, including a one year warranty, for $5,439.

j. www.wilddigital.com offers the EX1 camcorder with all accessories, including a one year warranty, for $5,435. It states that the EX1 camcorder "ships on order".

k. www.lensesnmore.com offers the EX1 camcorder, in stock, with all accessories for $5199. It states that "Everything we sell is 100% brand new and includes a full USA warranty!".

l. www.1wayphoto.com offers the EX1 camcorder, in stock, with all accessories for $4999. It states that "Everything we sell is 100% brand new and includes a full USA warranty!".

m. www.soniccameras.com offers the EX1 camcorder with all accessories for $5499. It states: "Includes USA Warranty".

41.    Each of the Broadway Group websites includes the same descriptive text alongside their listing for the EX1 camcorder. This text read as follows:

> The Sony PMW-EX1 is a flash-memory based high definition camcorder capable of a variety of frame rates and resolutions using Sony's new XDCAM-EX intraframe codec. The Exmor 1/2" CMOS sensors used in the PMW-EX1 provide unprecedented levels of image clarity previously unavailable in the prosumer market. Sony's sophisticated SxS Pro memory cards add a unique dimension to almost any production. Enhancing both usability and workflow efficiency, the PMW-EX1 has an extensive set of features that push the boundaries of traditional handheld cameras, including a continuous record time of up to 140 minutes! Whether shooting in 720p, 1080i, or 1080p modes, the PMW-EX1 has it all covered. Its bevy of output settings lets users take advantage of fast and slow motion, as well as popular frame rates such as the "film-like"\" 24p mode.

42.    Each of the Broadway Group and JOHN DOE websites use the same photograph of the device.

43.    Each of the Broadway Group websites either lists the product as "in stock" or states that it "ships on order", or both.

44.    Each of the Broadway Group websites lists the same "Included Accessories" (except for www.cameraaddict.com, which does not have such a list).

45.    Each of the Broadway Group websites includes links to the same alleged certification websites, each of which purportedly gives the website a "5 star" rating.

46.    On information and belief, the certification websites listed on the Broadway Group websites are not bona fide.  Among other things, the interactions of SONY's agents with some of these websites were inconsistent with even a moderately positive assessment of the websites' business practices.  Also, defendant websites have received negative ratings from the Better Business bureaus and from hundreds of customers.  Complaints appear on online seller review websites such as RESELLERRATINGS.com.  Accordingly, it appears that the Broadway Group Defendants use these purported certification websites as shams to cloak themselves in an unjustified, misleading aura of propriety.

47.    From January 11 through March 14, 2008, SONY received 22 complaints regarding offers for sale of the EX1 camcorder for prices below SONY's unilateral minimum price on the internet.  Fully 21 of these complaints concerned the Broadway Group Defendants.

### SONY's Discovery Of A Bait And Switch Scheme And The Offer For Sale of Non-Genuine EX1 Camcorders By The Broadway Group Defendants

48.    From January through February 2008, SONY's agents attempted to purchase the EX1 camcorder from certain of the Broadway Group websites.

49.     Each time that SONY attempted to purchase an EX1 camcorder from a Broadway Group website, SONY's agent was informed that the EX1 camcorder was in stock.

50.     Each time SONY attempted to purchase an EX1 camcorder, despite the product being allegedly in stock, some alleged problem arose to prevent delivery of the product.

51.     For example, after SONY's agent ordered the EX1 camcorder from www.bwayphoto.com, SONY's agent had provided credit card information and had received an order number. However, Broadway Photo subsequently advised SONY's agent that the camera in stock was "damaged", that it was the only one they had, and that it would take weeks to obtain a replacement.

52.     After ordering the camera from www.bwayphoto.com, SONY's agent was told that the EX1 camcorder was "actually, on backorder."

53.     Also after ordering the EX1 camcorder from www.bwayphoto.com, SONY's agent was told for the first time that the camera "required a lens," and that the camera could not be operated without the lens. The salesman said that the lens cost $1,995.00. When SONY's agent insisted on receiving the camera that she had ordered, and not any additional lens, Broadway Photo's representative became hostile, practically yelling, and saying "why are you going to buy a camera with no lens!?"

54.     In fact, the lens on the EX1 camcorder is factory installed and cannot be removed.

55.     After declining to purchase the $1,995.00 lens, the SONY agent was then transferred to another representative of www.bwayphoto.com, who told SONY's agent

that "everything on the unit is in Chinese – it's an international unit." The representative then told SONY's agent, "if you want the US model, it's almost $8,000.00."

56.     When SONY's agent attempted to purchase the EX1 camcorder from www.wilddigital.com, the agent was told that the unit was for sale for $5,979 with no warranty. According to www.wilddigital.com, if SONY's agent wanted the unit with a US warranty, the cost would be $6,699 with a one year warranty, and $6,999 with a three year warranty. SONY's agent purchased the unit without the warranty, for a total of $6,763 with tax and insurance. After completing the purchase, SONY's agent was informed for the first time that the item was unavailable. No item was ever delivered.

57.     When SONY's agent attempted to purchase from www.cameraaddict.com, SONY's agent was told that the camera was available for $5,819.00. However, SONY's agent was also told that the unit "is an empty unit" with no accessories, nothing. The "full" unit was $6,699 with a 1 year U.S. warranty.

**Defendants' False Representations About The EX1 Camcorder In Their Advertising**

58.     The Broadway Group websites make the following false and/or misleading representations concerning the EX1:

        a.   That SONY manufactures two versions of the EX1: a higher-cost version compatible with PAL video formats used outside the United States and one version that is not compatible with PAL formats. In fact, SONY sells only one EX1 camcorder, and it is "universal" in that it is compatible with PAL and non-PAL formats alike. All foreign-market versions of the EX1 camcorder sold by affiliates of SONY in non-U.S. markets are also universal in this respect.

b. That the Broadway Group Defendants' descriptions also falsely and misleadingly describe the EX1 camcorder as a "Prosumer" device. The EX1 camcorder is in fact a professional device, and calling it "Prosumer" tarnishes its reputation.

c. That the Broadway Group Defendants sell EX1 camcorders that incorporate a removable lens. (The Broadway Group Defendants have asserted that the lens is not included with EX1 camcorders that they sell.)

d. That the Broadway Group Defendants have the EX1 camcorder in stock when in fact they do not have it in stock.

e. That the Broadway Group Defendants sell EX1 camcorders that include (at no additional cost) certain accessories which they later inform their customers will not actually be included with the product.

59. The Broadway Group and JOHN DOE websites, relying on the Sony Marks, make the following false and/or misleading representations concerning the EX1:

a. That defendants possess genuine EX1 camcorders available for immediate sale and that they intend to sell them at prices steeply discounted from SONY's minimum unilateral price. On information and belief, defendants do not possess any genuine or intact EX1 camcorders immediately available for sale, and do not intend to sell any EX1 camcorders at their advertised, discounted prices.

b. That defendants sell EX1 camcorders that carry a one-year United States SONY warranty. In fact only genuine EX1 camcorders carry such a warranty.

c. The implied representation that they have a source of supply at below SONY's unilateral minimum price.

## Defendants' False Designation of Origin, Trademark Infringement and Unfair Competition

60. The Broadway Group and JOHN DOE websites are offering for sale product that they do not in fact have in stock. Alternatively, the websites are offering for sale product that is materially different from the EX1 camcorder product they are advertising. The fact that SONY only sells genuine EX1 camcorders to dealers participating in the XL Program confirms these conclusions. Defendants, who do not participate in the Program, cannot obtain genuine EX1 camcorders at the prices they have advertised for the product.

61. Some of the differences between the genuine EX1 camcorder and whatever defendants are selling, if anything, include the following:

a. Genuine EX1 camcorders incorporate a *non-detachable* high definition Fujinon 14x Zoom lens specifically designed for it. The Broadway Group Defendants have falsely asserted that the lens is not included with the EX1 camcorders that they sell.

b. Genuine EX1 camcorders are packaged and sold with the "Included Accessories" identified on the Broadway Group websites at no additional cost. The Broadway Group Defendants advertise these included accessories; however, they later inform their customers that

such accessories will not actually be included with the product they have purchased. For example, defendants have informed customers that the EX1 camcorder does not include an 8GB SxS card; but such a card is always included in genuine EX1 camcorder packages.

c. The Broadway Group Defendants have asserted that SONY has discontinued its published promotion offering a second 8GB SxS card as a mail-in rebate for EX1 camcorders purchased in the United States, but in fact SONY never discontinued that promotion.

d. Genuine EX1 camcorders carry a one-year U.S. SONY warranty. The non-genuine EX1 camcorders defendants are offering for sale do not carry such a warranty.

e. Genuine EX1 camcorders are subject to particular quality inspection requirements and procedures. The non-genuine EX1 camcorders defendants are offering for sale are not subject to the same quality inspection requirements and procedures.

f. Genuine EX1 camcorders incorporate English-language menus and come with English-language manuals or instructions. In some instances, the non-genuine EX1 camcorders the Broadway Group Defendants are offering for sale incorporate foreign-language menus, and come with foreign-language manuals and instructions. In January and February 2008, no EX1 camcorder had been manufactured with a menu using Chinese characters, but at that time, the Broadway Group

Defendants falsely asserted that they were selling an EX1 camcorder with Chinese menu characters.

g.  The Broadway Group Defendants have claimed to have the EX1 camcorder in stock when in fact they do not have it in stock.

62.  The above-listed differences are ones that customers would notice and consider relevant in the buying decision, and are therefore material.

63.  Defendants' use of the Sony Marks in connection with the EX1 camcorder on their websites has confused, and continues to confuse, customers by falsely stating or suggesting: (1) that SONY, which sells and warranties the quality of genuine EX1 camcorders, is the source of defendants' non-genuine EX1 camcorders; (2) that SONY guarantees the quality of defendants' non-genuine EX1 camcorders; (3) that SONY approves or endorses the sale of EX1 camcorders by defendants; and (4) that defendants are selling genuine EX1 camcorders. SONY is not the source of any EX1 camcorders that defendants are selling. SONY does not guarantee the quality of such non-genuine EX1 camcorders and neither approves nor endorses their sale by defendants. Defendants are selling non-genuine EX1 camcorders that are materially different from genuine EX1 camcorders in the ways described above.

## SONY Has Suffered And Continues to Suffer Injury Caused By Defendants' Actions While Defendants Have Profited From Them

64.  SONY has received multiple complaints from its dealers for the EX1 camcorder concerning the false and misleading advertisements of the Broadway Group Defendants.

65.  SONY has invested millions of dollars and substantial amounts of goodwill into the launch and rollout of the EX1 camcorder. The false and misleading

conduct of the defendants has jeopardized both the short and long-term success of SONY's investment in the EX1 camcorder and its progeny.

66.     SONY has invested millions of dollars and goodwill in establishing its reputation for excellent quality and technological prowess, and the strength of the trademarks that signify that reputation, including the Sony Marks.  By using the Sony Marks to advertise non-genuine goods that are not subject to the quality control procedures and standards SONY applies to genuine EX1 camcorders, defendants have caused SONY significant damage for which there exists no adequate remedy at law.

67.     On information and belief, defendants have profited from their acts and practices described more fully above.

68.     On information and belief, each of the Individual Defendants caused the remaining Broadway Group Defendants to engage in the deceptive "bait and switch" advertising and sales techniques described more fully above, and/or had control over one or more of the Broadway Group websites and knew that such website(s) were engaging in those techniques.

69.     On information and belief, defendants' "bait and switch" advertising and sales practices, as described more fully above, have been, and continue to be, materially misleading.  These practices seek to mislead and/or confuse customers of HD camcorders for the purpose of selling them such products and related accessories; on information and belief, they have caused customers to place credit-card orders for the purchase of EX1 camcorders which defendants do not have, and for HD camcorder accessories that such customers would not need had they chosen to purchase from a dealer that was in fact selling genuine EX1 camcorders.

70.    On information and belief, in making decisions concerning the purchase of HD camcorders and related accessories from defendants, customers have relied upon one or more of the misrepresentations or omissions of material fact concerning the EX1 camcorder that the Defendants make in their website advertising of the product.

## COUNT I

### Against All Defendants

**(FEDERAL FALSE ADVERTISING:** 15 U.S.C. §1125(a) (§43(a) of the Lanham Act))

71.    Plaintiff repeats the allegations contained in the preceding paragraphs.

72.    Defendants have used, and continue to use, the Sony Marks to advertise that they possess and intend to sell EX1 camcorders. The Individual Defendants caused and/or approved use of the Sony Marks in the advertising for the EX1 camcorder appearing on the Broadway Group Defendants' websites.

73.    Defendants have made, and continue to make, false and/or misleading statements, descriptions of fact and representations concerning the EX1 camcorder as described above. The Individual Defendants caused and/or approved use of the false and/or misleading statements, descriptions of fact and representations concerning the EX1 camcorder appearing on the Broadway Group Defendants' websites.

74.    Defendants' acts, as described above, constitute false advertising in violation of 15 U.S.C. §1125(a).

75.    Defendants' acts, as described above, were committed deliberately and willfully.

76.     Defendants' acts, as described above, have caused, and will continue to cause, damage in an amount to be determined at trial.

77.     Pursuant to 15 U.S.C. § 1117, SONY is entitled to recover the damages it has sustained from defendants' false advertising and the costs of this action.

78.     Pursuant to 15 U.S.C. § 1117, SONY is entitled to recover any profits defendants have derived with respect to the SONY and XDCAM marks.

79.     SONY has no adequate remedy at law for defendants' acts, as described above, in that: (i) defendants' actions injure and threaten to continue to injure SONY's unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the injury to SONY from defendants' wrongful actions are not precisely and fully ascertainable; (iii) the wrongful acts of defendants injure and threaten to continue to injure the Sony Marks and SONY's reputation and goodwill; and (iv) the injury resulting to SONY from defendants' wrongful conduct, and the conduct itself, are continuing, and SONY would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby.

80.     Unless restrained, the foregoing wrongful acts of defendants will continue to cause irreparable injury to SONY, both during the pendency of this action and thereafter.  SONY is therefore entitled to preliminary and permanent injunctive relief from those acts.

## COUNT II

### Against All Defendants

### (FALSE DESIGNATION OF ORIGIN/TRADEMARK INFRINGEMENT/UNFAIR COMPETITION: 15 U.S.C. §1125(a) (§43(a) of the Lanham Act))

81.     Plaintiff repeats the allegations contained in the preceding paragraphs.

82.     On information and belief, using the Sony Marks in the manner described above, defendants have offered for sale, and continue to offer for sale, genuine EX1 camcorders. On information and belief, using the Sony Marks in the manner described above, defendants have sold, and continue to sell, *non-genuine* EX1 camcorders. These non-genuine EX1 camcorders are materially different from the genuine EX1 camcorders that the dealers participating in the XL Program sell using the Sony Marks. The Individual Defendants caused and/or approved the sale of non-genuine EX1 camcorders on the Broadway Group websites.

83.     SONY has not authorized defendants to use the Sony Marks in connection with their offers for sale, and sale, of non-genuine EX1 camcorders.

84.     Defendants have used, and will continue to use, the Sony Marks in a manner that is likely to confuse, deceive and/or cause mistakes among customers by reason of the fact that those customers are likely to believe that the EX1 camcorders sold by defendants are genuine, originate from SONY, have been subjected to SONY's quality controls and procedures for genuine EX1 camcorders, and/or that their sale by defendants has been approved or endorsed by SONY. The Individual Defendants caused and/or approved such use of the Sony Marks on the Broadway Group websites. Such use of the Sony Marks by defendants constitutes false designation of origin, trademark infringement and unfair competition in violation of 15 U.S.C. §1125(a).

85.     Defendants' use of the Sony Marks as described above was and is deliberate and willful.

86.     Defendants' acts, as described above, have caused, and will continue to cause, damage in an amount to be determined at trial.

87.     Pursuant to 15 U.S.C. § 1117, SONY is entitled to recover the damages it has sustained from defendants' false designation of origin, trademark infringement and unfair competition, and the costs of this action.

88.     Pursuant to 15 U.S.C. § 1117, SONY is entitled to recover any profits defendants have derived with respect to the SONY and XDCAM marks.

89.     SONY has no adequate remedy at law for defendants' acts, as described above, in that: (i) defendants' actions injure and threaten to continue to injure SONY's unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the injury to SONY from defendants' wrongful actions are not precisely and fully ascertainable; (iii) the wrongful acts of defendants injure and threaten to continue to injure the Sony Marks and SONY's reputation and goodwill; and (iv) the injury resulting to SONY from defendants' wrongful conduct, and the conduct itself, are continuing, and SONY would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby.

90.     Unless restrained, the foregoing wrongful acts of defendants will continue to cause irreparable injury to SONY, both during the pendency of this action and thereafter.  SONY is therefore entitled to preliminary and permanent injunctive relief from those acts.

## COUNT III

### Against All Defendants

### (Violation of New York General Business Law §§ 349 and 350)

91.     Plaintiff repeats the allegations contained in the preceding paragraphs.

92. This Count sets forth a claim for deceptive acts and business practices and false advertising in violation of New York General Business Law §§ 349 and 350.

93. Defendants have engaged in, and continue to engage in, "bait and switch" advertising and sales practices. Defendants pretend to offer what appear to be genuine EX1 camcorders at steeply-discounted prices representing that such EX1 camcorders are "in stock" or ready for immediate shipment. In fact, defendants do not possess any inventory of ready-for-sale genuine product and/or do not intend to sell genuine EX1 camcorders, or even non-genuine product, at the prices advertised on their websites. In some instances, defendants attempt to sell non-genuine EX1 camcorders at or above SONY's unilateral minimum price. Consumers place credit-card orders for what consumers believe, based on defendants' descriptions, are genuine EX-1 camcorders, and defendants accept and process these orders, and provide such consumers with confirmations and order numbers. Thereafter, defendants inform such customers that they must purchase high-priced accessories, which are normally sold with genuine EX1 camcorders at no additional cost, in order to obtain a fully functional product. In some instances, defendants explain that the customer has purchased a foreign-market version of the EX1 camcorder that lacks important features such as a one year U.S. SONY warranty. On information and belief, defendants will then offer the customer the option of purchasing the genuine EX1 camcorder for a price substantially above SONY's unilateral minimum price, even though they do not possess genuine product.

94. Defendants' use of "bait and switch" advertising and sales techniques and their misappropriation of SONY's reputation and goodwill, and of the Sony Marks, in connection with their advertising and offers for sale of genuine EX1 camcorders

constitute deceptive acts and business practices in violation of New York General Business Law § 349. Defendants' deceptive acceptance and processing of consumer credit-card orders over the internet and telephone for the purchase of what consumers believe to be *genuine* EX1 camcorders, when defendants possess no genuine product, constitute deceptive acts and business practices in violation of New York General Business Law § 349.

95.     Defendants' use on their websites of false and misleading statements concerning the EX1 camcorder, including their statements falsely designating the origin of the non-genuine EX1 camcorders that they are selling, as described above, constitutes false advertising in violation of New York General Business Law § 350.

96.     Defendants' acts and practices, as described above, were willful and deliberate, and were made in bad faith.

97.     Defendants' acts and practices, as described above, have caused and will continue to cause damages in an amount to be determined at trial.

98.     Pursuant to New York General Business Law § 349, SONY is entitled to recover its actual damages caused by defendants' acts and practices, as described above.

99.     Defendants' acts and practices, as described above, have caused, and unless restrained and enjoined by this Court, will continue to cause irreparable harm, loss, and injury to SONY for which SONY has no adequate remedy at law.

## COUNT IV

### Against All Defendants

### (UNFAIR COMPETITION/TRADEMARK INFRINGEMENT
under New York Common Law)

100.   Plaintiff repeats the allegations contained in the preceding paragraphs.

101.   On information and belief, by using the Sony Marks in the manner described above, defendants have misappropriated SONY's property and valuable goodwill at no cost to defendants and have unfairly benefited from such use by obtaining new customers and selling product (other than genuine EX1 camcorders) to such customers that it would not have sold without such use.  The Individual Defendants caused the remaining Broadway Group Defendants to engage in such use of the Sony Marks, and/or approved such use.

102.   Defendants' acts and practices, as described above, including their "bait and switch" advertising and sales methods and their unauthorized use of the Sony Marks, constitute unfair competition and trademark infringement in violation of the common law of New York State.  The Individual Defendants caused the remaining Broadway Group Defendants to engage in such acts and practices, or approved their doing so.

103.   Defendants' unfair competition and trademark infringement are resulting, and have resulted, in substantial damage to SONY's business, reputation, and goodwill.

104.   Defendants' acts and practices, as described above, were willful and deliberate, and were made in bad faith.

105.   Defendants' acts and practices, as described above, have caused, and will continue to cause, damages in an amount to be determined at trial.

106. Defendants' acts and practices, as described above, have caused, and unless restrained and enjoined by this Court, will continue to cause, irreparable harm, loss, and injury to SONY for which SONY has no adequate remedy at law.

## COUNT V

### Against All Defendants

### (Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act: Ill. S.H.A. 815 ILCS 505/1 *et seq.*)

107. Plaintiff repeats the allegations contained in the preceding paragraphs.

108. Defendants' acts and practices, as described above, including their "bait and switch" sales and advertising practices, were unfair, deceptive, willful and deliberate, and constitute deception, fraud, false pretense, false promise, misrepresentation and the concealment, suppression or omission of material facts (with the intent that potential users of the EX1 camcorder rely upon the concealment, suppression or omission of such facts) violating 815 ILCS 505/2. The Individual Defendants caused the remaining Broadway Group Defendants to engage in such acts and practices and/or approved their doing so.

109. Defendants' acts and practices, as described above, have caused, and will continue to cause, actual damages in an amount to be determined at trial.

110. Pursuant to 815 ILCS 505/10a(a), SONY is entitled to recover its actual damages caused by defendants' acts and practices, as described above.

111. Defendants' acts and practices, as described above, have caused, and unless restrained and enjoined by this Court, will continue to cause, irreparable harm, loss, and injury to SONY for which SONY has no adequate remedy at law.

## COUNT VI

### Against All Defendants

### (Violation of the Connecticut Unfair Trade Practice Act: Connecticut G.S. § 42-110b)

112.    Plaintiff repeats the allegations contained in the preceding paragraphs.

113.    Defendants' acts and practices, as described above, including their "bait and switch" advertising and sales practices, which were willful and deliberate, constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce in violation of Conn. G.S. § 42-110b. The Individual Defendants directed and/or approved of these acts and practices, aided and abetted the remaining Broadway Group Defendants in committing them, and/or conspired with the remaining Broadway Group Defendants to commit them.

114.    Defendants' acts and practices, as described above, have caused, and will continue to cause, actual and ascertainable damages in an amount to be determined at trial.

115.    Defendants' acts and practices, as described above, have caused, and unless restrained and enjoined by this Court, will continue to cause, irreparable harm, loss, and injury to SONY for which SONY has no adequate remedy at law.

116.    Pursuant to Conn. G.S. § 42-110g(a), SONY is entitled to recover its actual damages caused by defendants' acts as described above.

## COUNT VII

### Against All Defendants

### (ACCOUNTING)

117.    Plaintiff repeats the allegations contained in the preceding paragraphs.

118.    SONY does not know the full extent to which defendants have engaged in acts and practices constituting false advertising, false designation of origin, trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

119.    SONY does not know the precise amount of money which the defendants have received as a result of, and in connection with, their false advertising, false designation of origin, trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125.

120.    SONY alleges that the defendants possess records that reflect the full extent to which the defendants have engaged in, and the precise amount of money which the defendants have received as a result of, and in connection with, their false advertising, false designation of origin and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125.

121.    SONY is therefore entitled to a judgment for a full accounting of the money and profits earned by the defendants as a result of, and connected to, their false advertising, false designation of origin, trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125.

**WHEREFORE**, Plaintiff Sony Electronics Inc. demands judgment against defendants, jointly and severally, as follows:

A.    On all Counts hereof, for an award of its actual damages in an amount to be determined at trial;

B.    On Counts I and II hereof, for an award of defendants' profits in an amount to be determined at trial;

C.    On Count IV hereof, for an award of punitive damages;

D.    On Count V hereof, for an award of punitive damages pursuant to 815 ILCS 505/10a(a);

E.    On Count VI hereof, for an award of punitive damages pursuant to Conn. G.S. § 42-110g(a);

G.    On all Counts alleged herein, for preliminary and permanent injunctive relief, including without limitation, the following:

  i.    enjoining the defendants, and each of them, from advertising for sale or otherwise describing or making reference to "EX1", "PMW-EX1", "PMWEX1", any designation confusingly similar thereto, or to any product name or designation containing the letter-sequence "EX1" or any of the other products in the SONY "EX" family of products, including by way of example, the "EX3", or any accessory thereto;

  ii.   enjoining the defendants, and each of them, from advertising for sale products listed on one of their websites as "in stock" when the listed product is not in stock;

  iii.  enjoining the defendants, and each of them, from offering for sale product that they, or any of them, do not in fact have in stock;

  iv.   enjoining the defendants, and each of them, from offering one product on their website and then attempting to switch the customer to another product after the customer seeks to buy the offered product;

     v.     enjoining the defendants, and each of them, from making statements about the EX1 camcorder, including without limitation, from making statements about the accessories which are or are not included with it;

     vi.    enjoining the Broadway Group Defendants, and each of them, from displaying links on a website to purported certification bodies where such bodies are not wholly independent, bona fide certification bodies without direct or indirect affiliation to any of the Broadway Group Defendants;

     vii.   enjoining the defendants, and each of them, to identify all websites operated, owned, or controlled directly or indirectly by any of them, and to update that list under oath quarterly until further order of the Court;

H.     On Counts I and II alleged herein, for an accounting for all profits derived by the defendants from their unlawful acts;

I.     An award to Plaintiff of the costs of this action, together with its reasonable attorneys' fees as allowed by law; and

J.     Such other and further relief as this Court finds just and proper.

## JURY DEMAND

Plaintiff demands trial by jury of all issues so triable.


Dated: New York, New York
       April 28, 2008

ZUKERMAN, GORE & BRANDEIS, L.L.P.

By: _____
    John K. Crossman (JKC 7387)
    Frank C. Welzer (FCW 7159)
    875 Third Avenue
    Twenty-Eighth Floor
    New York, New York 10022
    212.223.6700

*Attorneys for Plaintiff Sony Electronics Inc.*



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Apr 24 04:10:38 EDT 2008*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSER DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |
| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout | Please logout when you are done to release system resources allocated for you.

Start | List At:          OR | Jump | to record:          **Record 138 out of 171**

| TARR Status | ASSIGN Status | TDR | TTAB Status | *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | **SONY** |
| **Goods and Services** | IC 009. US 021 026. G & S: Video Tape Recorders, Video Disc Players, Video Cameras, and Recorded Video Tapes in Addition to Unrecorded Video Tapes. FIRST USE: 19630800. FIRST USE IN COMMERCE: 19630800 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73399964 |
| **Filing Date** | October 13, 1982 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | August 30, 1983 |
| **Registration Number** | 1258436 |
| **Registration Date** | November 22, 1983 |
| **Owner** | (REGISTRANT) Sony Corporation CORPORATION JAPAN 6-7-35 Kitashinagawa Shinagawa-ku, Tokyo JAPAN 141 |
| **Attorney of Record** | ROBERT B.G. HOROWITZ, ESQ. |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20040217. |
| **Renewal** | 1ST RENEWAL 20040217 |
| **Live/Dead Indicator** | LIVE |



|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY



**United States Patent and Trademark Office**

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Thu Apr 24 04:10:38 EDT 2008*



Logout  Please logout when you are done to release system resources allocated for you.

Start  List At:          OR  Jump  to record:          **Record 2 out of 2**

TARR Status    ASSIGN Status    TDR    TTAB Status    *( Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | **XDCAM** |
| **Goods and Services** | IC 009. US 021 023 026 036 038. G & S: video cameras, optical disc recorders/players. FIRST USE: 20040331. FIRST USE IN COMMERCE: 20040331 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 76535243 |
| **Filing Date** | July 24, 2003 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 20, 2004 |
| **Registration Number** | 2960438 |
| **Registration Date** | June 7, 2005 |
| **Owner** | (REGISTRANT) Sony Kabushiki Kaisha TA Sony Corporation CORPORATION JAPAN 7-35 Kitashinagawa 6-chome Shinagawa-ku Tokyo JAPAN |
| **Attorney of Record** | Robert B.G. Horowitz |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

